UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PAUL THOMAS PETERSON,

                    Plaintiff,                  Case No. 1:21-cv-295

v.                                      Hon. Hala Y. Jarbou

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder.  Fed. R. Civ. P. 21.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is further required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will sever the claims against Defendants Brydle and Salwin under Rule 21 into a new action, because they are misjoined.  The Court will also dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections and Unknown Part(y)(ies).

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan.  However, the events about which he complains occurred at the Detroit Reentry Center (DRC) in Detroit, Wayne County, Michigan and at the Muskegon County Jail in Muskegon County, Michigan.  Plaintiff sues the MDOC.  Plaintiff also sues the following MDOC personnel: Parole Agent Supervisor Jason Carlson, Parole Agent Lamesha L. Brydle, Gary T. Sawlin,[1] and Unknown Part(y)(ies).

Plaintiff alleges that Defendants have "effectively revok[ed]" his parole in violation of the Due Process Clause of the Fourteenth Amendment, subjected him to double jeopardy in violation of the Fifth Amendment, and violated various state laws.  (Compl., ECF No. 1, PageID.4, 6.)

Plaintiff alleges that on May 31, 2019, Defendant Carlson sanctioned Plaintiff to 10 days in Muskegon County Jail.  The complaint omits details surrounding what led Defendant Carlson to sanction Plaintiff or the process that Carlson employed.  However, documents Plaintiff has attached to his complaint allege that within Plaintiff's first day on parole, he (1) absconded, (2) tested positive for methamphetamines and suboxone, and (3) admitted to using drugs.  (ECF No. 1-1, PageID.43.)  Plaintiff alleges that he waived a preliminary hearing, but that he expressly retained his right to a full parole revocation hearing.  Plaintiff further alleges that Defendant Carlson "made findings and decisions to sanction [P]laintiff without ever affording [P]laintiff any

---

[1] The complaint does not indicate Defendant Salwin's position.  According to an MDOC directory, Defendant Salwin is one of the MDOC's Macomb Parole Office Supervisors.  *See* MDOC, *Corrections – Macomb Parole Office*, https://www.michigan.gov/corrections/0,4551,7-119-1435_1503-10556--,00.html (last visited June 3, 2021).

form of hearing . . . ." (*Id.*, PageID.8.)  Plaintiff served 10 days in the Muskegon County Jail and was released.

On July 18, 2019, police in Van Buren County allegedly arrested Plaintiff during a traffic stop.  Plaintiff alleges that he was detained pending a parole violation hearing.  He waived his right to a preliminary hearing, but he never received a parole revocation hearing.  He further alleges that "on or about 7-26-2019[,] [D]efendants made findings and decisions to sanction [P]laintiff to the RSAT[2] program . . . ." (*Id.*, PageID.9.)  Plaintiff allegedly was returned to DRC[3] on either August 6 or August 7, 2019.  (*Id.*, PageID.12, 15.)  Plaintiff alleges that he later consented to new parole conditions on October 3, 2019, which directed him to participate in a "PCS" program.  (*Id.*, PageID.11, 12.)  Although he does not clarify what the PCS program is, Plaintiff asserts that the PCS program is available to parolees who are not incarcerated.  The day after consenting to participate in the PCS program, Plaintiff was told that he would instead have to complete DRC's "Advance[d] Substance Abuse Treatment" program.  (*Id.*, PageID.11, 12.) Plaintiff alleges this change violated his Fifth Amendment right to be free from being placed in double jeopardy.  Plaintiff allegedly refused to sign a new parole contract or to consent to participate in the program until an order issued directing him to participate.  On October 31, 2019, Defendant Brydle allegedly served Plaintiff a notification charging him with violating his parole. Plaintiff asserts that Defendant Byrdle's "recommendations to revoke [P]laintiff's parole were approved by [Defendant] Salwin." (*Id.*, PageID.17.)

---

[2] Earlier in the complaint, Plaintiff identifies RSAT as the "Residential Substance Abuse Treatment" program.  (*Id.*, PageID.6.)

[3] Plaintiff refers both to "DRC" and, more frequently, to the "Ryan Correctional Facility."  The MDOC renamed Ryan Correctional Facility as the Detroit Reentry Center (DRC).  *See* MDOC, *Corrections – Detroit Reentry Center (DRC)*, https://www.michigan.gov/corrections/0,4551,7-119--5350--,00.html (last visited June 4, 2021).

3

Plaintiff seeks unspecified injunctive relief, declaratory relief, $25 thousand per month of incarceration in compensatory damages, and $1 million per month in punitive damages.

## II.    Misjoinder

Plaintiff joins five Defendants, each sued in both their personal and official capacities, connecting at least two discrete claims.  At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*,

4

No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was

also an attempt by Congress to curb frivolous prisoner litigation.  *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner, like plaintiff, may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to

circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.  Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.

Therefore, the Court will look to the first and earliest clear factual allegations against that Defendants to determine which portion of the action should be considered related. Plaintiff's first and earliest factual allegations assert that Defendant Carlson sanctioned him and detained him in Muskegon County Jail for 10 days.  These are Plaintiff's only allegations involving Defendant Carlson.  They involve no other Defendants other than, arguably, Defendants MDOC and Unknown Part(y)(ies). Moreover, it is clear that no question of law or fact is common to all Defendants.  *See* Fed. R. Civ. P. 20(a)(2)(B).  Plaintiff has, therefore, improperly joined Defendants Brydle and Salwin.

### B. Remedy

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  *Id.*   Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F.

Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845. Accordingly, the Court will exercise its discretion under Rule 21 to sever the claims against Defendants Brydle and Silwin into a new action.[4]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

---

[4] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under

28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.

Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

## IV.    Defendant MDOC

Plaintiff may not maintain a § 1983 action against Defendant MDOC.  Regardless

of the form of relief requested, the states and their departments are immune under the Eleventh

Amendment from suit in the federal courts, unless the state has waived immunity or Congress has

expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp.

v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara

v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874,

877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that Defendant

MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*,

*Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).   In addition, the State of Michigan (acting through Defendant MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court will dismiss Defendant MDOC.

## V.     Defendant Unknown Part(y)(ies)

Plaintiff makes no allegations against Defendant Unknown Part(y)(ies).  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally

10

devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention Defendant Unknown Part(y)(ies) in the body of his complaint.  His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, Plaintiff's references to conduct generally by "Defendants" are insufficient.  The Sixth Circuit has concluded, for example, that "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).  Therefore, Plaintiff cannot maintain a claim against Defendant Unknown Part(y)(ies) where his only allegations that might include Unknown Part(y)(ies) allege conduct committed generally by "Defendants." Accordingly, the Court will dismiss Defendant Unknown Part(y)(ies).

## VI.     Defendant Carlson

Plaintiff argues that the revocation of his parole by Defendant Carlson was unconstitutional.  Generally, a challenge to the fact or duration of physical imprisonment is not the proper subject of a civil rights action brought pursuant to § 1983, but rather should be brought as a petition for habeas corpus.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody.").  A state prisoner cannot make a cognizable claim under § 1983 for "harm caused by actions whose unlawfulness

11

would render a conviction or sentence invalid" unless a prisoner shows that his conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  In other words, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Plaintiff's claim is not barred by the doctrine in *Heck*.  Like the plaintiffs in *Wilkinson*, Plaintiff challenges the procedures used to determine whether he was entitled to remain on parole, not the result of that decision.  *See Wilkinson*, 544 U.S. at 82 ("Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson).").  Like the *Wilkinson* plaintiffs, Plaintiff does not seek release; instead, he seeks damages.  *See id.* ("Neither respondent seeks an injunction ordering his immediate or speedier release into the community.").  Accordingly, success in Plaintiff's action will not necessarily imply that he is entitled to release.  *See id.*  ("Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.").  Thus, *Heck* does not prevent Plaintiff from bringing his claim. Therefore, the Court concludes that Plaintiff has alleged facts sufficient to state a Fourteenth Amendment Due Process Clause claim against Defendant Carlson.

## Conclusion

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that the Defendants Brydle and Sawlin are misjoined in this

action.   The Court will sever claims against them into a new, related action.   Having further conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC and Unknown Part(y)(ies) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's due process claim against Defendant Carlson remains in the case.

An order consistent with this opinion will be entered.


Dated:   June 8, 2021                                       /s/ Hala Y. Jarbou                               
                                                            HALA Y. JARBOU
                                                            UNITED STATES DISTRICT JUDGE